# EXHIBIT 10


Paramount Residential Mortgage Group, Inc.

**LOAN OFFICER
EMPLOYMENT AGREEMENT**

An Equal Opportunity Company

Paramount Residential Mortgage Group, Inc., a California corporation ("Company"), and Mark Shafer ("Employee"), effective as of this 7/20/2018 hereby agree as follows:

I. **DUTIES AND COMPENSATION:** Company hereby hires Employee as a Loan Originator in accordance with the terms hereof. Employee shall perform such duties as Company directs from time to time. Employee shall be paid commissions, or related draws and advances, on all qualified loan transactions as set forth in the COMMISSION ADDENDUM TO LOAN ORIGINATION / EMPLOYMENT AGREEMENT (Exhibit "A"). Employee's primary duty shall be that of an outside salesperson as outlined below.

A. <u>Outside Sales Employee – Commission Only (EXEMPT)</u>


Initials
(If applicable)

Employee's primary duty, **excluding those employed as *Producing* Branch Managers**, shall be the sale of mortgage loan products and services to residential mortgage customers. Employee shall at all times devote substantially more than 50 percent of Employee's working hours outside of any Company office, home office, and any other fixed site, meeting with customers and potential customers seeking residential mortgage financing. Employee's primary duties shall include without limitation:

1. Working with customers to create loan packages that meet their particularized needs and goals, while guiding them through the complex requirements of the various lenders;

2. Educating customers regarding mortgage loans generally, the mortgage loan process, the different types of loans available, and how costs and payments can vary under the numerous alternatives available, so customers can make informed decisions in acquiring the appropriate loan to fit their respective needs;

3. Originating the actual mortgages;

4. Overseeing the loan transaction from initiation, through processing, approval, closing and recording, while ensuring that the customer understands and is satisfied with the process, and that the activities undertaken comply with Company and industry guidelines and policies;

5. Handling customer questions and complaints.

6. Minimum Service and Production Standards require that:

   a) Employee will maintain a current license status at all times during his/her employment with PRMG, including any continuing education requirements. Sanctions issued against Employee by HUD, or other federal or state agency, may be grounds for termination of employment with PRMG.

   b) After the first three months of employment with PRMG, Employee is expected to originate a pipeline with sufficient funded volume to cover employment costs. If not, we reserve the right to terminate the agreement and/or require a two-month deposit for Employee enrollment in PRMG benefit plan(s).

    c) Employee will strictly adhere to all Agency and PRMG loan origination, processing, and underwriting policies and procedures. Deviations from these policies and procedures—including violations of PRMG's *Zero Loan Fraud Tolerance* and *Conflict of Interest* policies—may result in termination of employment and possible forfeiture of any commissions on loans funding after the termination date.

    d) Excessive levels of early payment defaults and/or early payoffs loans originated by Loan Originator may be grounds for disciplinary action, including termination.

7. Anti-Predatory Lending Policies

    a) Employee will strictly observe all federal, state and local predatory lending laws and PRMG's anti-predatory lending policies, including – but not limited to – 12 C.F.R. 226.32, California Financial Code Section 4970, and other state predatory lending laws as may be amended from time to time. PRMG does not make "high cost" loans, as defined under these statutes.

    b) Pricing of loans may not deviate from PRMG's published rates

B. **Minimum Wage Exemption, Overtime Exemption, and Commission:** Operating under this structure, Employee shall receive compensation for qualified loan transactions in the form of commissions as set out in Exhibit "A" hereto. Employee will not be paid any minimums, or guaranteed any particular amounts, other than as calculated in accordance with Exhibit "A." Medical, dental and life insurance premiums, 401(k) contributions and payroll taxes shall be withheld from Loan Originator's commission check in accordance with existing federal and state regulations and withholding requirements.

C. **Automobile Insurance:** Employee will maintain public liability and property damage insurance with respect to every motor vehicle used in the course of his/her employment. SSuch insurance will have at least the minimum liability coverage required by law. As set forth by Company policy, Employee will be reimbursed for all expenses necessarily incurred by Employee arising from Employee's performance of his or her job duties, including but not limited to the use of Employee's personal vehicle for business related travel, as approved by the Company.

D. **Notice of Change in Duties and Responsibilities:** Employee is required to notify Company promptly in writing in the event that the duties Employee is performing and the duties described above differ in any material manner.

## II. COMPLIANCE:

A. **Applicable Law and Company Policies:** Employee shall at all times remain knowledgeable of and strictly comply with all applicable laws, rules, policies, procedures, practices, regulations and ordinances, whether promulgated by federal, state or local authorities ("Legal Jurisdictions"), Company or others.

B. **Marketing Practices:** Employee shall at all times follow Company's marketing policies and approval procedures and any applicable federal and state advertising laws and regulations, including but not limited to: the Truth in Lending Act and CFPB Regulation Z, Mortgage Acts and Practices Act and Regulation N, Real Estate Settlement Procedures Act and Regulation X, Unfair and Deceptive Acts and Practices Act, SAFE Act, and any rules issued by the U.S. Veterans Administration, the Department of Housing and Urban Development, and the Consumer Financial Protection Bureau. Employee must notify and obtain approval to use websites, social media pages, flyers or any other means of advertisement to procure business or promote Company in any way.

C. **Licensing and NMLS:** Employee must possess a valid Nationwide Mortgage Licensing System ("NMLS") Account and ID ("NMLS ID") and agrees to undertake full responsibility to manage and maintain its NMLS Account. Employee further agrees to limit his/her mortgage origination activities to the Legal Jurisdictions in which he/she holds a valid license as a loan originator, and, if applicable, in which the Company and the Employee's branch office location are also authorized to originate mortgage loan transactions. Employee may only originate loans out of the branch location where his/her NMLS ID is registered under in the Nationwide Mortgage Licensing System. Any Mortgage Loan Originator License deficiencies, education

requirements, and renewals with applicable state agencies through our outside of NMLS are the responsibility of Employee.

  D. **Company Email**: Employee acknowledges and agrees to only use the email account provided by Company when communicating about any and all work related matters. If Employee is transmitting non-public personal information, Employee further agrees to encrypt all messages that contain such information.

  E. **Changes in Company Policies and Procedures**: Employee recognizes the right of Company, at any time, in its sole and absolute discretion and with notice, to change, modify, or adopt new policies and practices affecting the employment relationship.

III. **EXEMPTION FROM OVERTIME AND MINIMUM WAGE**: Employee has reviewed the job description concerning this position, and acknowledges, understands, and agrees that if **Employee chooses to work as an OUTSIDE SALES EMPLOYEE** as defined above in Section I (A), Employee is classified as an exempt employee, and therefore **NOT ENTITLED TO** any overtime compensation, minimum wage, or similar payments under federal, state or other law. Additionally, as an outside salesperson, Employee will be exempted from all provisions set forth by the applicable California Industrial Welfare Commission Wage Order, including but not limited to provisions regulating overtime, minimum wage, and meal and rest periods. (Wage Order 4-2001(1)(C); 8 Cal. Code of Regs. § 11040(1)(C)).

IV. **RECORDKEEPING**: Employee agrees at all times to keep complete and accurate records of each hour worked while in Company's employ, submit certified records detailing such information to Company in accordance with Company policies and procedures, and promptly notify Company if Employee fails to devote more than 50% of their working hours outside of any Company office, home office, and any other fixed site, meeting with customers and potential customers seeking residential mortgage financing.

V. **BENEFITS**: Upon meeting the respective eligibility requirements, Employee shall be eligible for such fringe benefits, including participation in employee benefits plans, as are provided to other employees employed by Company in a similar capacity.

VI. **AT-WILL EMPLOYMENT**: Notwithstanding anything to the contrary herein, the parties hereby agree and acknowledge that: (a) the employment relationship between them is wholly an "at-will" relationship for unspecified duration, and neither party shall have any obligation (whether arising by law, implication, custom or otherwise) to extend, maintain or continue Employee's employment with Company; (b) employment can be terminated at will, with or without cause, and with or without notice, at any time, at the option of either or both parties; and (c) no employee or representative of Company has the authority to modify the at-will nature of this employment except for Company's President or Chief Executive Officer, and any such modification must be in a written agreement signed by both parties.

VII. **COMPENSATION UPON TERMINATION**: Upon cessation of Employee's employment, Employee shall be paid any compensation earned up to and including the Termination Date (as defined below). No other compensation will be deemed earned after termination of employment, except as otherwise expressly provided herein, or required by applicable law, Employee shall not be entitled to any further compensation, including (but not limited to) salaries, draws, benefits, fringe benefits, commissions, or bonuses. Notwithstanding the foregoing, if (a) a loan has been locked by Employee's activities on or before the Termination Date, and (b) Employees termination is without cause, and (c) following the Termination Date, Employee continues to perform the duties necessary to successfully conclude the loan transaction, and (d) such loan meets all the criteria necessary for a commission payment within the 30-day period immediately following the Termination Date, or a later date, if by written agreement executed by Employee and Employee's Branch Manager prior to Termination Date, Employee shall earn any commissions that would have been earned had the Employee remained in the employment of Company during such period. The term "Termination Date," as used in this Agreement, means Employee's last day of active employment with Company regardless of how occurring. If Employee has received advances or similar payments against future unearned compensation (including

situations when an advanced commission is deemed overpaid due to mistakes or other intervening events), then, at the time of termination, all unearned payments shall immediately be repaid by Employee (*e.g.*, if Employee has been advanced unearned commissions and separates from employment with Company before such commissions are earned, Employee will have been overpaid and any such unearned commissions will be deducted from Employee's future compensation (including Employee's final paycheck)). Company shall have the right to offset any commissions due to Employee in order for the Employee to repay any draw amounts Employee owes Company. The Company reserves the right, but is not required, to enter into a separate agreement or payment schedule permitting Employee to pay the Company for unearned advances to the Company. In the event Employee fails to make full and timely payment of any amounts owed to Company (including for unearned advances), such unpaid amounts will be subject to collection by civil action from Employee like any ordinary debt to the fullest extent permitted by law, and Company shall have the right to pursue any such remedies available for recovering unpaid debts in the appropriate forum.

## VIII. EXCLUSIVITY:

*Initials (If applicable)*

A. <u>Exclusive Business Efforts and Interests</u>. Unless Employee receives prior written approval from a duly authorized officer of Company, Employee agrees to: (i) devote his/her full business time, efforts and attention to the business and affairs of the Company on an exclusive basis while employed by Company; (ii) not engage in any other employment, or independent contractor relationship that conflicts or interferes with Employee's job duties for the Company; and (iii) not own or operate any business that provides residential mortgage lending services, or own or operate any mortgage-related business (such as credit counseling, processing and underwriting services), or have more than one percent (1%) ownership interest in ("Beneficial Interest"), or control over or any member of Employee's immediate family (e.g., spouse, parent or child), have a Beneficial Interest in or control over any business that provides real estate settlement services as defined under the Real Estate Settlement Procedures Act, including, but not limited to title and closing services, survey or appraisal services, or real estate agent or brokerage services.

B. **NO EXCLUSIVE TERRITORY. EMPLOYEE SHALL NOT HAVE ANY GRANT OF ANY EXCLUSIVE REGION OR TERRITORY.**

IX. **SUPERVISION AND AUTHORITY:** As an employee of Company, Employee shall at all times be subject to the direction and control of Company and its senior management with regard to Employee's execution of duties set forth herein. Company at all times retains the sole and exclusive discretion with respect to the issuance of approvals and mortgage loan commitments. Employee has no right to make any contract or other commitment, including mortgage loan commitments for, or on behalf of, Company. Employee shall have no authority to, and shall not, open, attempt to open, operate or attempt to operate, any bank account in Company's name, or in the name of any trade name under which the Company may be doing business, or any similar name. All monies received by Employee for Company, or on Company's behalf are funds of Company and will be made payable to Company, and all such monies are deemed to be held in trust and shall be delivered immediately to Company, all in accordance with Company policies and procedures. Employee shall not have the right to incur any obligation on behalf of the Company or create any liability, whether real, contingent, implied or apparent, in the name of the Company, except as specifically set forth or as otherwise authorized in writing by a duly authorized officer of Company.

## X. <u>RESTRICTIVE COVENANTS</u>:

A. <u>**Conflict of Interest.**</u> Conflict of interest is a situation in which a person has both a professional and personal interests in a business transaction. Employee must notify Company in writing of any conflict of interest in a pending mortgage loan transaction or simultaneous purchase transaction, or any personal relationship with any party to either transaction, including, but not limited to the borrower, seller(s), or real estate agency or agents (the "Conflict"). This written notice must be provided once Employee becomes aware of the Conflict, but no later that the date in which the loan application is submitted for lock approval. The Employee is expected to remove himself/herself and/or notify the Company to remove any other employee(s) involved in processing, underwriting or closing the transaction in which a Conflict exists.

B. **Equitable Remedies**: In the event of a breach or threatened breach of the provisions of Section X hereof, including related attachments, Employee agrees that the injury that could be suffered by Company (which for purposes of this Section shall include Company's successor-in-interest) would be of a character that could not be fully compensated for solely by a recovery of monetary damages. Accordingly, Employee agrees that in the event of a breach or threatened breach of these provisions, in addition to and not in lieu of any damages sustained by Company and any other remedies which Company may pursue hereunder or under any applicable law, Company shall have the right to equitable relief, including but not limited to issuance of a temporary, preliminary or permanent injunction or restraining order, by any court of competent jurisdiction against the commission or continuance of any such breach or threatened breach, without the necessity of proving any actual damages or posting of any bond or other surety therefore. The restrictive covenants contained in this Agreement are independent of any other obligations between the parties, and the existence of any other claim or cause of action against Company is not a defense to enforcement of said covenants by injunction. Employee agrees that in connection with any application for injunctive relief, discovery shall be conducted on an expedited basis, and both parties hereby waive the right to request posting of a bond by the party requesting injunctive relief. In addition to, and not in limitation of the foregoing, Employee understands and confirms that, in the event of a breach or threatened breach of this Section, Employee may be held financially liable to Company for any loss suffered by Company as a result. Employee and Company agree that in any legal proceeding undertaken to enforce the terms and provisions of this Agreement, the prevailing party shall be entitled to reimbursement of its actual costs and expenses, including without limitation its reasonable attorneys' fees and expenses.

## XI. MISCELLNEOUS PROVISIONS:

A. **Entire Agreement:** This Agreement sets forth the entire and only agreement or understanding between the parties relating to the subject matter hereof and supersedes and cancels all previous agreements, negotiations, letters of intent, correspondence, commitments and representations in respect thereof among them, in each case whether oral or written, and no party shall be bound by any conditions, definitions, warranties or representations with respect to the subject matter of this Agreement except as provided in this Agreement.

B. **Severability:** In the event any provisions hereof shall be modified or held ineffective by any court in any respect, such adjudication shall not invalidate or render ineffective the balance of the provisions of this Agreement.

C. **Tolling and Suspension:** In the event of a breach by Employee of any restrictive covenant contained in this Agreement, the running of the period of restriction shall automatically be tolled and suspended for the amount of time the breach continues, and shall automatically commence when the breach is remedied so that Company shall receive the benefit of Employee's compliance with the terms and conditions of this Agreement.

D. **No Assignment:** Neither this Agreement nor any rights or obligations of Employee hereunder shall be transferable or assignable by Employee without the express written consent of Company, which may be withheld in Company's sole and absolute discretion. This Agreement may be freely transferred and assigned by Company to any successor or related entity upon notice to Employee.

E. **Applicable Law:** This Agreement shall be governed by and construed in accordance with the laws of the State of California. Unless otherwise required by law or agreement of the parties, venue for any proceeding related to this Agreement shall lie in Riverside County, California; provided, however, that if venue in Riverside County is deemed to be not appropriate under applicable law, then venue shall lie in the county in which Employee was based as an employee of Company.

F. **Cooperation upon Termination:** Prior to and following the Termination Date, the parties hereto shall cooperate fully in effecting an orderly transition of the business contemplated by this Agreement to avoid any interruption in the handling of the business contemplated by this Agreement. All loan information and documentation shall at all times remain the sole and exclusive property of Company. Loan applications taken by Employee shall be transferred pursuant to the Applicant's written request, together with copies of documents submitted by the Applicant and documents obtained in the course of processing the loan application in accordance with Company policy and applicable law.

G. **Notice:** Any and all notices, demands or requests required or permitted to be given under this Agreement shall be given in writing and sent, by registered or certified U.S. mail, return receipt requested, by hand, or by overnight courier, addressed to the other party hereto at its address set forth below, or such other address as such party may from time-to-time designate by written notice, given in accordance with the terms of this Section 11.G.

| COMPANY: | EMPLOYEE: |
|---|---|
| 1265 Corona Pointe Ct. | Mark Shafer |
| Corona, CA 92879 | (Name Printed) |
| | 13504 Alexander Rd |
| | (Address) |
| | Valley View OH 44125 |

Notice given as provided in Section G. above shall be deemed effective: (i) on the date hand delivered, (ii) on the first business day following the sending thereof by overnight courier, and (iii) on the fifth calendar day (or, if it is not a business day, then the next succeeding business day thereafter) after the depositing thereof into the exclusive custody of the U.S. Postal Service, except for a notice of change of address, which shall be deemed effective only upon receipt.

H. **Survival: Sections 7, 10 and 11 hereof shall survive termination of this Agreement.**

I. **Waivers:** No waiver of any breach of any provision of this Agreement shall be construed to be a waiver of any other or subsequent breach of the same or any other provision of this Agreement.

J. **Amendment:** This Agreement may not be amended in any respect except by an instrument in writing signed by the parties hereto.

K. **Headings:** The headings in this Agreement are solely for convenience of reference and shall be given no effect in the construction or interpretation of this Agreement.

L. **Counterparts:** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute one and the same instrument.

M. **No Third-Party Beneficiaries:** This Agreement is not intended, and shall not be deemed, to confer upon or give rights to any person except as otherwise expressly provided herein.

N. **No Prior Restraints:** Employee represents and warrants to Company that Employee is under no obligation to any former employer, entity or person which in any way is inconsistent with Employee's employment by Company in accordance with this Agreement, or which may impose any restrictions or liability on Company or Employee's performance of services for Company.

O. **Certain Usage and Terminology:** In this Agreement, unless a clear, contrary intention is obvious from the context, (i) the words "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular section or other subdivision, (ii) reference to any section, means such section hereof, (iii) the words "including" (and with correlative meaning "include") means including, without limiting the generality of any description preceding such term, (iv) where any provision of this Agreement refers to actions by a party, such provision shall be construed to refer to actions taken directly or indirectly by such party, and (v) whenever the context requires, the singular shall include the plural and the masculine shall include the feminine.

P. **No Strict Construction:** The language used in this Agreement shall be deemed the language chosen by the parties to express their mutual intent, and no rule of strict construction shall be applied against either party on the ground that such party is the drafter of the Agreement or any particular provision hereof.

**Q. Incorporation of Attachments:** The attachments identified in this Agreement constitute a part of this Agreement and are hereby expressly and specifically incorporated herein by reference in their entirety as if fully set forth in this Agreement.

**R. Review:** Employee agrees and acknowledges that, prior to signing, Company has granted Employee sufficient time to review the Agreement, including allowing Employee (in Employee's sole discretion) to take the Agreement home for further study and review. Employee further understands that the terms and conditions of this Agreement are a condition of employment. Company has encouraged Employee to freely discuss the terms of this Agreement with others, including any lawyer of Employee's choosing, prior to signing, however, the terms of this agreement are not subject to negotiation.

**S. No Reliance:** Employee is not resigning Employee's employment or relocating a residence in reliance on any promise or representation by Company regarding any guaranteed length of employment or guaranteed compensation.

**T. Withholding:** Employee acknowledges that all compensation earned under this Agreement shall be subject to applicable withholding and deductions.

**U. Resolution of Disputes:** Parties agree to first attempt to resolve any controversy or claim arising out of or relating to this Agreement by participating in mediation as a precondition to either party filing a cause of action, excepting only to a petition for a temporary or permanent injunction or restraining order against the commission or continuance of a breach or threatened breach of contract provisions. Parties further agree and acknowledge that the Company and Employee will utilize binding arbitration to resolve all disputes that may arise out of the employment context. Both the Company and Employee agree that any claim, dispute, and/or controversy that either Employee may have against the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) or the Company may have against Employee, arising from, related to, or having any relationship or connection whatsoever with Employee seeking employment with, employment by, or other association with the Company shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. sec 1280 *et seq.*, including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery). Included within the scope of this Agreement are all disputes, whether based on tort, contract, statute (including, but not limited to, any claims of discrimination and harassment, whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation), equitable law, or otherwise, with exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, Employment Development Department claims, or as otherwise required by state or federal law. However, nothing herein shall prevent me from filing and pursuing proceedings before the California Department of Fair Employment and Housing, or the United States Equal Employment Opportunity Commission (although if I choose to pursue a claim following the exhaustion of such administrative remedies, that claim would be subject to the provisions of this Agreement). All claims brought under this binding arbitration provision shall be brought in the individual capacity of Employee or the Company. This binding arbitration Agreement shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees or parties, or permit such claims or controversies to proceed as a class action, collective action, private attorney general action or any similar representative action. No arbitrator shall have the authority under this agreement to order any such class, collective or representative action. By signing this agreement, Employee is agreeing to waive any substantive or procedural rights that Employee may have to bring an action on a class, collective, private attorney general, representative or other similar basis. In addition to any other requirements imposed by law, the arbitrator selected shall be a retired California Superior Court Judge, or otherwise qualified individual to whom the parties mutually agree, and shall be subject to disqualification on the same grounds as would apply to a judge of such court. All rules of pleading (including the right of demurrer), all rules of evidence, all rights to resolution of the dispute by means of motions for summary judgment, judgment on the pleadings, and judgment under Code of Civil Procedure Section 631.8 shall apply and be observed. Resolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including but not limited to, notions of "just cause") other than such controlling law. The arbitrator shall have the immunity of a judicial officer from civil liability when acting in the capacity of an arbitrator, which immunity supplements any other existing immunity.

Likewise, all communications during or in connection with the arbitration proceedings are privileged in accordance with Cal. Civil Code Section 47(b). As reasonably required to allow full use and benefit of this agreement's modifications to the Act's procedures, the arbitrator shall extend the times set by the Act for the giving of notices and setting of hearings. Awards shall include the arbitrator's written reasoned opinion. Employee understands and agrees to this binding arbitration provision, and both Employee and the Company give up their right to trial by jury of any claim Employee or the Company may have against each other.

**IN WITNESS WHEREOF, the parties have caused this Agreement to be executed effective as of the date first above written.**

**COMPANY:**                   **EMPLOYEE:**

BY: _____

Paul Rozo                            _____ Mark Shafer

(Name Printed)                  (Name Printed) Mark Shafer

ITS: CHIEF EXECUTIVE OFFICER

DATE: **7/20/2018**              NMLS ID:1193034

Mark Shafer

EXHIBIT "A"



1265 Corona Pointe Court, Suite 301
Corona, CA 92879
Telephone: (951) 278-0000
www.PRMG.net

## COMMISSION ADDENDUM TO LOAN ORIGINATION / EMPLOYMENT AGREEMENT

### NON-SOLICIT

Please consent below that you are aware of PRMG's non-solicitation clause in your Loan Originator Agreement and that PRMG has advised you not to violate any agreement you executed with a former employer. If PRMG discovers that you have violated any previous agreements you have made with prior employer's you will be subject to termination.

_____
Employee Signature

### COMPENSATION SCHEDULE

When Commissions are Earned.

Mortgage Loan Originator (MLO or "Employee") acknowledges that PRMG's determination of the amount of commissions earned on a loan transaction are based upon a fully commissionable loan transaction having occurred without any breach of the Employment Agreement or occurrence of any disqualifying event. No commission is earned until the date when all conditions for earning the commission have been fully satisfied, including but not limited to (a) the completion of all tasks and paperwork necessary to fully close and fund the loan transaction; (b) the amount of commissions owed is fully ascertainable based upon the final closing statement and other related documents; (c) the non-occurrence of any disqualifying event or funding of a loan that results in an Early Payment Default ("EPD") or Early Pay Out ("EPO"). The "non-occurrence of any disqualifying event" includes, but is not necessarily limited to the discovery of the Employee's involvement in fraud, conflicts of interest, failure to obtain necessary license, loss of license, or other breaches of the Employment Agreement as determined by management in its sole discretion. In the event that Employee has funded a loan that results in an EPD or EPO, the commission will be deemed unearned, and the transaction deemed non-commissionable.

Employee will not be paid commission on any loan that closes more than thirty days after the Employee's termination date for the reason that Employee is unable to perform a substantial amount of the work required as a part of the origination process.

Draws Against Commissions; Advances.

PRMG reserves the right, but is not obligated, to pay Employee a draw against Employee's future commissions. This includes, but is not limited to, draws which may be paid to a new Employee over the initial 90 days of employment, or other period deemed appropriate in management's discretion. All draws paid are treated as debts and shall be recoverable from future commissions are they are calculated, but in all cases, the commissions credited to a loan transaction shall be subject to further

Mark Shafer

adjustments and chargebacks due to the occurrence, if any, of disqualifying events or funding of a loan that results in EPD and EPO situations. Draws and advances are not earned wages but are subject to recovery and/or repayment from future commissions, or if such commissions are not sufficient to recapture draws or advances paid, then such amounts may be recovered by civil action or other means as set forth in the Employment Agreement and/or to the extent permitted by law.

Commission Amount.

Mortgage Loan Originator (MLO) will receive compensation as follows for business <u>ORIGINATED</u> by MLO effective <u>7/20/2018</u>. The Mortgage Loan Originator (LO) must originate, fund and close the loan under PRMG's name for the MLO to be entitled to the compensation outlined below.

Mortgage Loan Originator Commission

Self-Generated Compensation:    150 BPs*

In-House Compensation:    100 BPs**

*MLO is paid 75 BPs on the unpaid principal balance (UPB) for all loans referred to either the Home Equity Conversion Mortgage (HECM) Division or Alternative Funding Solutions/ Low Cost Loans/ Bond Department (AFS) for origination and funding. Additionally, unit and volume credit will also be applied toward the Annual President's Cabinet totals.

On all Retail closed loans (Except for HECM & AFS Referrals) a $49 fee will be deducted from the Loan Originator's commission.

MLO will not be paid any commission or receive any unit or volume Credit toward the Annual Presidents Cabinet totals on DPA, 2nd lien or 3rd lien government bond programs. MLO will not receive any compensation or volume credit on 2nd lien loan's referred to TCF as MLO does not originate the TCF loan.

**If the MLO is no longer with the company at the time an In-House lead funds, PRMG at its own discretion will determine if the MLO worked the majority of the loan.

## LOAN QUALITY & MINIMUM REQUIREMENTS

All loans funded by MLO will be subject to PRMG's review, on a quarterly basis for loan quality. Should loan/file activity be of poor quality, MLO may be subjected to a reduction in compensation rate and/or subject the MLO to termination of employment. Poor loan/file quality includes but is not limited to RESPA violations including inaccurate Loan Estimate (LE) or Closing Disclosures (CD) outside of the tolerance level. The first drop in prospective compensation as a result of loan quality violation(s) generally would be at a minimum, a 50% reduction in tier compensation.

PRMG has an expectation that all of their MLO's will be full time and therefore fund no less than one loan per month to remain employed.

If after 90 days there has been no closed loans this shall be grounds for termination.

Mark Shafer

## LICENSING REQUIREMENTS

As a MLO for PRMG, I understand I must be fully licensed via the NMLS system and within 24-hours of my start date, I agree to provide access rights to PRMG to my NMLS record in order for PRMG to process my sponsorship. I further acknowledge that I will remain NMLS compliant throughout my tenure with PRMG and am currently registered on the NMLS system under the following number(s):

NMLS# 1193034        OH# LO.046982.000

As an MLO, I understand that I must disclose/charge the applicable lender fees as illustrated on PRMG's applicable rate sheets.

PRMG reserves the right to change this Pay Plan at any time and will inform you of any change that is made.

_____  07/16/18
Loan Officer (Signature)   Date


_____  _____
Direct Manager             Date


_____  _____
Paul Rozo CEO              Date